**COMMUNITY COALITION FOR MEDIA CHANGE, Appellant,**

v.

**FEDERAL COMMUNICATIONS COMMISSION, Appellee,**

**Buckley Broadcasting Corporation, of California, Intervenor.**

No. 79–1780.

United States Court of Appeals, District of Columbia Circuit.

Submitted Nov. 19, 1980.

Decided Dec. 22, 1980.

---

Louis A. Highman, San Francisco, Cal., on brief, for appellant.

Robert R. Bruce, Gen. Counsel, F. C. C., Washington, D. C., with whom Daniel M. Armstrong, Associate Gen. Counsel, Keith H. Fagen and L. Andrew Tollin, Counsel, F. C. C., Washington, D. C., were on brief, for appellee.

Martin R. Leader and Kathryn R. Schmeltzer, Washington, D. C., were on brief, for intervenor.

Before McGOWAN, EDWARDS and GINSBURG, Circuit Judges.

Opinion PER CURIAM.

PER CURIAM:

Community Coalition for Media Change (CCMC), a San Francisco Bay area media watchdog group, petitioned to deny the license renewal application of Buckley Broadcasting Corporation of California for classical music station KKHI. The Broadcast Bureau, and subsequently the Commission on petition for reconsideration, rejected CCMC's charges as insufficiently specific and inadequately documented to warrant inquiry. We agree and affirm the Commission's order.

CCMC's petition to deny KKHI's license renewal was untimely. However, the FCC, pursuant to its rules, considered CCMC's charges as informal objections. CCMC alleged, principally, that KKHI maintained discriminatory employment practices with respect to non-white persons, did not provide an effective training program, and deliberately misrepresented in its annual employment reports that two of its employees were American Indians.

On July 10, 1978, the Broadcast Bureau denied CCMC's petition because CCMC had "failed to plead facts which indicate that a grant of . . . renewal . . . would be

*prima facie* contrary to the public interest." Specifically, the Bureau pointed out that KKHI's most recent (1977) Annual Employment Report showed that 17 percent of its overall staff and 16 percent of its upper-four staff were members of minority groups. The Bureau also observed that Commission policies do not require a formal training program, and it rejected as lacking substantiation CCMC's "conclusory statement" that KKHI falsely represented two of its employees to be American Indians. Finally, the Bureau found no misrepresentation in the licensee's use of workforce data that did not include two counties in the area. Inclusion of those counties, the Bureau noted, would have yielded no significant difference in the data.

In a memorandum opinion and order denying reconsideration, released June 20, 1979, the Commission agreed with the Bureau's determinations that KKHI's employment profile did not establish a *prima facie* case of discrimination, and that CCMC alleged no facts which would establish misrepresentation or improper classification of employees. Specifically, the Commission referred to statistics demonstrating that the labor market area workforce was 39.4 percent female and 26.8 percent minority, including 10.7 percent Hispanic, 9.5 percent black, and 6.6 percent other minorities. KKHI's 1977 employment report, the Commission observed, fell well within the "zone of reasonableness"[1] if the station had properly classified its employees. On that question, the Commission pointed out that under the FCC's then applicable definitions and instructions, licensees could rely upon the stated beliefs of employees as to their racial origins and were not called upon to question an employee's self-classification.

In *Bilingual Bicultural Coalition on Mass Media v. Federal Communications Commission*, 595 F.2d 621 (D.C.Cir.1978) (en banc), this court held that the FCC is not obliged to investigate charges of discriminatory employment practices in the absence of specific allegations of overt discrimination or statistical evidence of substantial underemployment of minority groups.[2] The opinion cautioned that if responsible, well-pleaded claims of discrimination are made, the FCC will be obliged to inquire further. A hearing ordinarily will be required if the facts alleged point to actual discriminatory conduct. Indication of a substantial statistical disparity placing a licensee's minority employment outside the "zone of reasonableness" will require the FCC at least to gather more information before granting the renewal application. *Id.* at 629–30. However, the court declared that allegations of "ultimate, conclusionary facts or more general allegations on information and belief, supported by general affidavits . . . are not sufficient," and evidence of "minor statistical disparities between the available minority workforce and a station's minority employment, standing alone, in most cases, will not warrant a hearing." *Id.* at 629. CCMC's petition and related papers plainly do not cross the threshold standard this court set in *Bilingual*.

■ CCMC submitted affidavits of only one former KKHI employee, a black female who said she resigned because of derogatory treatment. The affidavits contained no concrete, detailed allegations of actual discriminatory conduct by KKHI. Moreover, CCMC acknowledged that KKHI's 1977 employment profile was well within the "zone of reasonableness," if it was then proper for KKHI to count two of its employees as American Indians. The Commission held

---

1. The "zone of reasonableness" is not a static concept; it contracts over time as doors are opened to groups once excluded. In 1977, the FCC's rule of thumb was that a station's employment profile fell within the zone if it reflected employment of at least 50 percent of the percentages of minority groups and females in the relevant workforce and 25 percent of those percentages in the station's upper-four jobs.

*Bilingual Bicultural Coalition on Mass Media v. FCC*, 595 F.2d 621, 629 (D.C.Cir.1978) (en banc).

2. *Bilingual* and this case concern renewal proceedings in which no other applicant seeks the license. We again express no view concerning situations in which comparative hearings are required. *See Bilingual*, 595 F.2d at 624 n.1.

that KKHI had not improperly classified the two employees, and we agree. Absent instruction from the FCC to go beyond an employee's own representation of his or her racial or ethnic origin, a licensee could not be expected to embark on further investigation. CCMC's broadside charges of employment discrimination, in short, did not warrant greater attention than the FCC gave to them.

We take this opportunity to disapprove the lack of diligence with which CCMC pursued its petition and appeal. Considering only the more egregious examples of noncompliance with the Federal Rules of Appellate Procedure and the rules of this court, a pattern of neglect is apparent. CCMC twice filed motions for extensions of time to file its brief, one of the two motions itself untimely filed. Despite the court's generosity in granting the motions, CCMC failed to file its brief within the extended time. CCMC's final motion for an extension to file its brief was untimely by several weeks and was prompted by a motion to dismiss. Its response to a second motion to dismiss was several months late and was filed only in response to an order of this court. Consistent with its ultra-casual method of proceeding, CCMC filed a deficient, unpaginated appendix and did not consult with the other parties concerning its contents.

Nor was the FCC's performance a model of procedural punctilio, although its lapses were not as marked or as persistent as those of CCMC. The FCC moved for leave to file the required certified index after the time to do so had expired, and it filed an untimely motion to extend the filing time for its brief.

In summary, this record reflects a cavalier attitude toward the Federal Rules of Appellate Procedure and the rules of this court, an attitude that impedes the just, speedy, and inexpensive disposition of judicial business. We note the stringent standard the Second Circuit has announced regarding untimely filings: "Unless [an] application for extended time is made so that it may be considered before the allotted time has expired, it is evidence of a lack of good faith and, failing extraordinary circumstances, it constitutes neglect which will not be excused." *Gilroy v. Erie Lackawanna Railroad Company*, 421 F.2d 1321, 1323 (2d Cir. 1970). That standard, we believe, is equally appropriate for cases appealed to this court.[3]

*Affirmed.*

---

3. Dismissal of the appeal may be in order in cases such as the one before us in which conspicuous disregard is shown for case-processing rules. Where that sanction would unfairly penalize clients for the neglect of their attorneys, measures directed against dilatory counsel are available. *See Butler v. Pearson*, 636 F.2d 526 (D.C.Cir.1980).